First case on the docket is case number 523-0699, Fuel Performance Solutions, Inc., against the estate of Rex Carr, deceased. Counsel, are you ready to proceed? I'm ready, Your Honor. Do you not have something for the record that you usually say on the record? No, just please say your name for the record. Wait a second. How about the recording? No, that's on the Zoom. Oh, okay. Please state your name for the record, Counsel, and then you may proceed. May it please the Court, Brian McGovern on behalf of Appellant Fuel Performance Solutions. May it please the Court, Your Honor. Again, my name is Brian McGovern. I represent the Appellant Fuel Performance Solutions. There are two primary issues before the Court today with respect to the claim of FPS, and I'll refer to Fuel Performance Solutions as FPS. The first is whether the claim of FPS was assigned in its entirety to other parties. The second is whether or not just an interest in the claim was assigned. I know this Court is well aware of the facts and has reviewed the briefs. There's a few facts I would like to talk about just to set the timeline. On about May 14th of 2015, Mr. Carr's son, Rex Carr, of course, was a decedent, was appointed independent executor, and filed a petition for probate of will and letters. Around that time, multiple claims were filed, including the claim of Fuel Performance Solutions. Based upon the record before the Court, it is the contention of the appellant that the claim is, in fact, timely. That's one of the issues presented certainly before this Court today is whether it was timely, and we contend that, in fact, it was. On about December 12th of 2022, the estate filed a demand for a bill of particulars, and that was being done to try to determine the effect of the interest or what interest the parties had relative to the claim of FPS. In response, FPS identified several individuals who claimed to have an interest in the claim of FPS. In response, FPS identifies those individuals and specifically says that they have an interest in the claim itself. On January 11th of 2023, FBI-FBS filed this request to add additional parties, and at that time, they identified who they are, they identified what the interest in the claim is going to be, and the allocation of the money amount that each one is going to be responsible for. The estate then filed a motion to dismiss, indicating that the parties should have been added earlier, and based upon their position that, in fact, the claim in its entirety had been, in fact, transferred or assigned, there was nothing left for the individuals to have or nothing left for them to pursue. The estate alleges that the pleadings filed in this case make clear that FPS has no claim remaining in the case, and that judgment should, therefore, be immediately entered. We obviously take a different position, and first, we take the position that, in fact, the claim was timely filed. So let me stop you for a moment. With regard to the underlying claim, this is, and you may need to explain it to me a little clearer than maybe I have an understanding, but there was an agreement between Mr. Carr, Rex Carr, and Fuel Performance Solutions that Fuel Performance would be able to get a loan, if you will, from Mr. Carr up to $1 million, and in return for Fuel Performance Solutions asking for, say, $100,000. Correct. They would secure that loan with stock in their company. I think that's correct, Your Honor. Who was that agreement with, and did that survive? I mean, so the money that's issued here is not money that Rex Carr had already loaned. No. It's money that was still left to be asked for? That's correct, Your Honor. This would be distributions that would come out of the estate, and so effectively these were claims against those distributions is our position. Correct. So, in other words, was the agreement, how did the agreement survive Rex Carr's debt? In other words, how is it that Fuel Performance Solutions or their representative, who are they allowed to request that money from at this point? They could make the claim to the estate, and so FBS, in fact, did that. Okay. That's what I'm trying to get at. The agreement with Rex Carr was not an agreement with him individually. It was an agreement with him and his estate? No, I think it was a claim with him individually, and then upon his death they opened up the estate. The FBS then made the claim against the estate. But it's not necessarily owed to FTC or FBS. FBS had a right to make that request. That's correct. During the life of Mr. Carr, but after he passed. They made the claim against the estate. Okay. So that's the money that we're talking about. That's what we're talking about. And the specific issue, Your Honor, is is that a claim, in fact, as today for the FBS to make, or is that a claim that the individuals could make because the contention of the estate is there was a complete assignment of that claim to them. It is our position that it was not an assignment of the client. It was simply an assignment of the interest in the distributions from the client. Okay. But FBS has never given anything of substance, a stock because my understanding is they no longer issue stock, can issue stock. I think that's correct. In FBS. FBS has never given any collateral to Rex Carr during his lifetime or afterwards in expectation of receiving any of the remaining money that was left to be asked for. I think that's correct. I think what they're doing is effectively an investment. These individuals were effectively putting on some of the money in the hope of receiving more. So they had an assignment of an interest in the estate. Right. Okay. Thank you. To talk now just a little bit more. Yes, Your Honor. If I may, I don't recall the exact dates, but FBS files the claim, and then later there was, I believe you said, a motion to add additional parties. Correct. If FBS has the underlying claim, why add additional parties?  The estate has taken the position that there was a complete assignment of the claim from FBS to these individuals. If that, in fact, happened, then FBS would no longer have a claim, and we have nothing to pursue through the estate. What we are contending is that this was nothing more than effectively an investment. These individuals then did put money in, and what they were entitled to was some of the distribution, not that the claim was assigned to them. They were simply assigned the right for distribution of funds coming out of the estate. Thank you. As to the timeliness, we contend that, in fact, it was timely filed. When the estate was opened on July 30th of 2015, FBS did, in fact, file a claim, and that claim had been pending. The estate takes the position that, based upon statements made by prior counsel, that, in fact, that assignment had taken place. I want to talk about that just briefly. On February 22nd of 2023, FBS counsel at the time stated that the dollar amounts of the claim, which he's referring to interest in the claim, were assigned to the named individuals. And, Your Honor, that's the named individuals get identified as a result of that bill of particulars. Moreover, FBS counsel stated in open court, and this is the quote, as follows, So you know, and based on my statement in court back on January 30th, when I said that we assigned all of our interest, and he's talking about FBS, that was a mistake, okay? It was verbally said in the courtroom, not under oath, as we're just talking. It was supposed to be an allocation of dollar based on a valid claim being granted versus actually assigning the actual claim to each one of the parties. So now the question for the court is, what is the effect of counsel's statement like that made in open court? What is the effect of that? Is it binding? Is it, in fact, conclusive? Is it a judicial admission? Illinois takes the position that a statement is not a judicial admission if it is a matter of opinion, estimate, appearance, inference, or uncertain summary. Any admission contained in a verified pleading, which is not the product of mistake or inadvertence, is a binding judicial admission. Courts are not to apply the doctrine of judicial admissions to bar claims or defenses where there was other evidence to support such a claim or defense. There is an issue as to what happened here, and there is an issue as to whether or not there, in fact, was a complete assignment of this claim or whether, again, it was an assignment of interest. The court goes on to say the statements of counsel are not judicial admissions if counsel mistakenly stated in open court that FBS assigned its entire claim to the named individuals rather than assigning the interest of the claim to the individuals. It is not even clear if such statements were made on the record. In fact, the individual attorney indicated that, in fact, they were not made on the record. So as you look at what did these individuals do, and we've discussed that to some extent, they basically made an investment is what they were doing. There was not a complete assignment of the claim. There is nothing in the record before this Court to suggest that, in fact, there was. There is nothing to suggest that there was a complete assignment. There is nothing more than identification of these individuals, as you point out, Your Honor, demonstrating that, in fact, they had an interest in a distribution. Now, Illinois law does not require a well-planned claim such as civil procedure would with respect to filing claims against an estate in the probate court like this. The relevant section requires only that a claim be in writing and that it say sufficient information to notify the representative of the nature of the claim or other relief sought. Section 2-615E of the Illinois Code of Civil Procedure provides that any party may seasonally move for judgment on the pleadings, which is what happened in this case, and that was what was granted. A motion for judgment on the pleadings requires the trial court to examine the pleadings so as to determine whether there is an issue of fact or, conversely, whether the controversy can be resolved as a matter of law. The analysis is very similar to a summary judgment. We're looking to see, in fact, is there a genuine issue of material fact and are we entitled to a judgment of matter of law? In this case, there are very significant issues of fact. There are issues of fact that's, again, as to whether there was a complete assignment of the interest in the estate or whether, in fact, it was just an assignment of a distribution. In terms of the remaining issues, those are the primary ones, and it's whether, again, the claim was timely. We contend that, in fact, that it was. FBS contends that a timely file was claimed against the estate, and I don't think it's really disputed. They did that shortly after the death of Mr. Carr. FBS contends that a timely file was claimed. In terms of the interest in the claim itself, counsel further explained, and this is what happened, again, at that hearing in court, that the interest of the claim was allocated or assigned, not the claim itself, for the purpose of a motion for judgment on the pleadings. The non-movement statements or allegations are to be taken as true and as well-pleaded facts. The prior counsel did, in fact, say that, and he said that this was intended as an assignment of the interest. It was never intended to be an assignment of the entire claim. As a general rule, an assignment is the transfer of some identifiable property. It has to be something that is actually being transferred. They claim the right from the assigner to the assignee. A valid assignment needs only to assign or transfer the whole or a part of some particular thing, debt, or chose in action, and it must describe the subject matter of the assignment. Again, what we're trying to really clarify here and to straighten out effectively is the statements that counsel made while he was in court and the statements that, in fact, it was a transfer of the claim, which he has now indicated and has indicated on the record that, in fact, that was a mistake. He did not intend to say that. He didn't mean that to be true. That is not what was intended with respect to the assignment that took place. Aren't there pleadings, though, filed by the attorney saying the same thing? There's a motion to dismiss in which there's a response where there is some confusion as to the position he's taking as to the assignment. There is the statement, obviously, that he made in open court that, in fact, it was an assignment, which he later recanted and indicated that that was a mistake. In the bill of particulars, which were filed, there is the response which identifies the individuals which now have the interest in the estate distributions. In that same bill of particulars, there is then an amendment to that in which prior counsel makes it very clear that it was nothing more than an assignment of an interest. It was not, in fact, an assignment of the claim. So as we look through the record, it's unclear, which I think would suggest to this court that if it's unclear, there are issues of fact that need to be determined. And we are asking that this matter be reversed, that the decision of the circuit court be reversed, and this matter be sent back to the circuit court for further hearings with respect to what, in fact, happened relative to the claim. Thank you, Your Honor. I have a question. You're saying it's an assignment of an interest and not an assignment of a claim. Correct. Can you explain that a little more? Yes. Explain what the difference is. The assignment of the claim would be if FPS assigned the entirety of the claim that it had against the Rex Carr estate, it would have assigned that to these individuals specifically. The assignment of the interest is the position that we are taking and we think has been substantiated within the record, was that what was assigned was a right to a distribution from the estate. So if, in fact, there would have been a distribution coming out of the estate, then these individuals who are identified in the bill of particulars would have the ability to receive and collect that distribution. The claim would still be there because we don't know what the distributions may be. We don't know how much those distributions may be. But these individuals who are identified would be entitled to a distribution, but they would not own the claim. It would not be their claim. It would be nothing more than and what you'll see in the record, Your Honor, is that there are promissory notes where, in fact, these distributions are identified as potential collateral. So it's an investment by them with a right to receive distributions out, not the right to control or to, in fact, own the entirety of the claim. But I don't understand. Would that flow through FBS? Yes. So if there was a distribution coming out to FBS, FBS would have the obligation through these promissory notes and through these collateral agreements to then distribute those funds to these individuals who effectively made an investment. So connecting the dots, FBS has a claim. It receives funds from the estate. FBS then doles out funds to the various investors. Yes, based upon the contributions or based upon the investment that they made. Everything flows through FBS. That's your position? Yes. Okay. But if FBS did, in fact, sign its claim to these other individuals? No. No. Oh, I'm sorry. If it had, if we find that it no longer has a valid claim that its claim was assigned, then nothing flows through them at that point. Which is what the estate is arguing. Right. Because the estate is arguing that if, in fact, FBS assigned its claim, there would no longer be a claim pending against the estate from FBS, which had timely filed. You then have these individuals who did not file a claim. Right. And so the estate is arguing that, in fact, they're out of time, that they should have filed a claim if they thought they had one, back within the time frames established by the court. But they didn't do that. And so the position the estate takes is that because of that, there's no claim pending, and they're out of time to file a claim. They're not filing a claim. What they're looking for is the distribution based upon an investment they made, consistent with the language within the promissory notes that were signed. So the claim that FBS claims. And I saw I'm out of time. If we could conclude.  He may proceed. Thank you, Your Honor. The claim that FBS has or had, its request for distribution from Russ Carr was a request to his estate after his death? Yes. For the money in question? It was never made during his lifetime? I'm not aware of that, Your Honor. I'm not sure. Okay. And the agreement that FBS and Russ Carr had with regard to this underlying, you know, line of credit, if you will, is that, that's in writing? Yes. That's memorialized and you've got a copy of that. There's something that says when that expires? I believe that's correct, Your Honor. And when does it expire according to its terms? I believe it would expire upon the closing of the estate. The estate is still open. So the writing doesn't say, you know, this is between the parties and upon the death of one of the parties. No, it doesn't erase the claim. It does simply the claim then was being made against the estate itself and not Mr. Carr individually. Did Mr. Carr have the right to refuse a request for a distribution? I don't know. To be very honest with you, I'm not sure if the language says that or not. But practically speaking, how do you close the estate if there are claims against it? You wouldn't. I think the estate is going to remain open until issues like this, and I'm not sure if there are any others, remain open. I mean, there is an open pending claim. Obviously, the court ruled against us with respect to our request for reconsideration, which brings us here. We're simply asking for the opportunity to demonstrate that, in fact, this was an assignment only of a distribution out of the estate and not an assignment in its entirety of the claim. The agreement that Justice Barber is asking about, was there a survivability clause? Survivability beyond his life? Correct. I'm not sure, Your Honor. Okay. There's promissory notes in which they articulate the collateral that's to be used, and that's what, for the four individuals, that's where that all arises from. I would assume your opponent will clarify for us his position on those questions. I suspect he will. And then you don't have an opportunity to respond on rebuttal. So thank you, Counsel. Thank you, Your Honor. Counsel for Appleby. Good morning. And please state your name for the record. Ross Anderson for the estate, the defendant, Appleby. Your Honor, in response to what was said, I'd like to give a little history first. The claims were filed in 2015. The assignments were made in 2015 and 2016, so that these assignments, which finally became known to us in 2022, were made in July, August, and the following January of 2015, 2016. The assignments assigned, they were set with respect to specific dollar amounts for the four people who were involved with the assinees, and in each note says that the company hereby assigns, and the company was FPS, an amount, and in each case it might be $300,000 in one case or $50,000 in another, of its valid claim to a holder as collateral to the investment. So what the assignment actually states is we assign this amount, and the total amount of the assignments to these four people was $600,000 on a $500,000 estate claim. So they assigned more than $100,000 of what the value of the claim was. And there it sat. Where are the assinees? Where are the people who might assert such a claim? They say it will flow through FPS, but FPS has assigned more than the total value of its claim to these assigners, and there is no retention in any of the notes, could have been, any interest at all in FPS. FPS simply assigned the claims to these individuals, to the assinees. The law, this is really a one-book law. I cited the restatement of contracts in several cases that have indicated that an assignment is a manifestation of the assigner's intent to transfer the thing assigned, and the obligor's interest is completely extinguished. That's the language in the restatement. That's the language that is adopted in all of the cases I've cited. In one case, there was actually a statement that the Strasburg case, there was actually a statement that indicated it was a collateral. It didn't make any difference. Once he assigned it, the entire interest was assigned, and the individual who assigned it actually was a jury verdict in his favor that the appellate court reversed because he had assigned away all of his interests. How do you respond to counsel's argument that it was a transfer of an interest as opposed to a transfer of a claim? Because it wasn't. The language in the notes don't say that, and the language in the pleadings don't say that. Counsel keeps talking about statements of counsel, but on January 11, and we appeared for my motion to dismiss at that time because they hadn't added anybody. On January 11 of 2023, we appeared, and counsel showed up with a response to my demand for particulars, and in that response, and he showed up with a motion. I'm sorry. First, he showed up with a motion. He showed up with two motions. One was called a motion to enjoin additional parties. One was called a motion to add additional parties. They were, in essence, the same motion. They were filed on January 11. In that motion, and if I may take a second here, in that motion, he actually set out the amounts that were to be paid, and he states here, in July of 2016, we assigned $300,000 to three of the S&Rs. In August of 2016, we assigned an additional $150,000 to another S&R, and then in December of 2016, we assigned an additional $150,000 to three of the S&Rs. So this occurred within, really, the first six months of opening the estate. The deadline for filing claims that were unknown, and we certainly didn't know of these people, was January of 2016, January 15. The two-year date of deadline was April 27 of 2017. So both the initial deadline and the two-year deadline passed while this was going on. We heard nothing. We argued in January of 2021. We argued a motion for summary judgment based on the issues that have been set out here. We argued there had been no election. The agreement required that FPS make an election. It wasn't just pay $500,000 for history, and the agreement was you could elect at this time $50,000, and in return you would have to give FPS stock as valued on the OTC. So there was really, it was a stock sale, basically. And what you did is there was a zero amount that was to be transferred anyway, and the elections would be made. By the time Ruckschar died, no additional elections were made at all. When we arrived on January 11, this request to contain additional parties stated that they are to add additional parties, but it also sets out the claims, and then in addition, on January 30, we were provided with notes, and the court actually suggested, and this has not been brought up, that we file a motion for judgment on the pleadings because the January 11 pleadings to add additional parties reflected to the court that the entire claim had been assigned to these assinees. And then the judge inquired of counsel, what is the additional claim? What does FPS have? And furthermore, this is five years ago. In our motion for judgment on the pleadings, we pointed out that really the only potential issue in light of the assignment, and we didn't think it existed, and we thought it was way too late, was to file a motion to substitute and have these assinees come in. They decided not to do that. It wasn't brief. It's not before the court now, but the issue was if the court had granted it or denied it, the issue would be an abuse of discretion, but before you even have an abuse of discretion, the court must be given an opportunity to exercise discretion. In this case, there was no effort to substitute or to bring these folks in, even though the assignment was well set up. In the response to the estate's demands for particulars, the first response, and what happened then is the court on January 11 said, look, I'm going to give you time. We've never heard of these people before. This case has been pending. We've had multiple trial settings. We've had a motion for summary judgment that has been argued, and I'm going to give you time to come in and say why this case exists at all. And they filed and came in with a hand delivery of a response to the estate's demand for particulars, which I have attached as Exhibit 1 to the motion for judgment on the pleadings, and in that response, he states, fuel performance has assigned its entire claim filed with the court as collateral to the parties listed in response number 1. So they have stated on the record in response to the bill for particulars and in their motions that they have assigned the entire claim to others. The law is clear. When you assign by a 10 and a claim in the language in the notice, we assign our valid claim. You have assigned all right, title, and interest to that claim, and you retain no interest. Your involvement in the case is done. Is there language in their answer where it says fuel performance has assigned its entire claim filed with the court as collateral to the assignees? As collateral? Does that indicate that FDS is retaining the claim, only assigning the collateral that they would have from their claim? No, it doesn't, Your Honor. I tried to say, Your Honor, and it came up, John. That's just terrible. I apologize. No, it doesn't, Your Honor, because an assignment of an entire claim is just very clear. You assign all right, title, and interest to what you own. That it is used as collateral simply goes to the issue of consideration. The issue of assignment is perfectly clear. They have said it there, and they have also said it out in their motions to add. So the idea that this is just counsel's statement is simply not correct. They have filed two motions to add additional parties on January 11. Then they filed it again on February 10. Why, I don't know, but it's setting out the same interests. The court was quite correct. The court looked at this. The court wasn't relying particularly on statements of counsel. The court said this entire claim has been assigned. FDS has no interest. Now, what happened is counsel came in and, citing Black's Law Dictionary, said hold up the assignment because the judge gave him all the time in the world. We came back. It was February 23rd before we finally got this heard, and he came back with the idea that Black's Law Dictionary assignment is equivalent to an allotment, is what he argued before the court. There's no Illinois law that supports that. There's no general law that supports that. Only Black's Law Dictionary is the only thing he cited, and the judge properly in response said, counsel, I'm not going to play drug games with you. I want some evidence here that says that you have retained an interest or something that you can put before me that supports your position that FDS still has a claim. He had nothing, and then he emphasized that his statement had been mistaken, but he put no evidence before the court. The court, as the court is well aware, our response to a demand for particulars isn't legal. And anyway, they responded, and they said they'd assigned their entire claim. Now, they filed an amended response, and in the amended response, they started putting out allotment, and the idea in that is if there's a recovery, they're going to be the person that transmits the recovery in the event of a judgment. But that doesn't address at all the legal effect of the assignment. When you assign something, you assign. You give all of your right, title, and interest, and that is the language in the bill. So, I know you talked about the bedrock law in your brief. With regard to the assignee's rights, if they've been assigned, in this case, FDS's claim, do they not stand in the exact place of FDS with regard to, you know, if they've made the claim, do the assignees have to make an additional claim? No, there has to be something done, Judge. I think it's, you know, in the civil practice, it's set out in 2-1008. And then any number of interests could be the cause for changing what's going on. But you've got to do something. You've got to come in. The appropriate approach in this case would be to come in and substitute as parties pleading, and appear before the court. They're completely aware of this, and they have come in, and they will come in. One of the things the counsel admitted before the judge and is trying to do is, I don't represent them. I don't have the right to file anything. But most themselves say that their actions and the jurisdictions be assessed in applying law is the law of New York. They're not even admitting that they're subject to the jurisdiction of this court. How can we ever resolve this if the people who actually own the claim will not appear? And I believe they're going to resist appearing. So I don't think they're ever going to appear before this court, and they're the people who own the claim now. If they want to assert the claim, they can come in and assert it. What about counsel's point, though, that there is a material issue of fact? Wouldn't this be proper for a hearing before the judge? The judge has the facts, and I am at a loss to figure out what the material issue of fact. The judge had the language in the notes. The judge had the statement in response to the demand for particulars. The judge had counsel's original statement. All of those support that there was an assignment. The judge was not given a single piece of information that was a justiciable piece of information upon which he could deny the estate's motion for judgment on the pleadings. And the judge, actually having received the pleadings, the motions that were joined on January 11th, is the one who suggested that we file a motion for judgment on the pleadings. And while also they came in with the notes themselves, the law is clear that the judge has a discretion, particularly in the context of a probate, a more informal procedure to treat it as a motion for summary judgment or to treat it as anything. But the judge is a careful judge, and the judge is really kind of a treasure. We have been going on for seven years, and nobody ever heard of these guys. And nonetheless, he gave counsel up to January 30th and then up to early February and then up through February 23rd to file something before him that supported his condition and supported the FBS's contentions, and nothing was put before the court at all. On the record that we have before us, what the judge has is that there's a $600,000 assignment to these folks of a $500,000 claim, and that's it. And there isn't anything, you know, they could have written anything into these notes. They could have said, well, we retain an interest in Will a lot. That could have been put in there. It's not there. And language has to have consequences, and this language is that there is an assignment. I know your indicator says you're out of time, but I would ask, just more to humor me and let me ask a few more questions. And this may be irrelevant to resolving what's before us, but from my understanding, the agreement, I'm going to go back to what I was asking before. The agreement with Mr. Carr and with FBS, what was that agreement? How did that survive Rex Carr's death? Can FBS, your position with regard to can FBS or its assignees make a claim against the estate after Rex Carr's death for money they did not request prior to his death? That was the basis of our summary judgment, and I actually thought we were going to win that. But what happened is the commitment itself says that Rex Carr will have available, and it's Rex Carr individually, will have available $1 million from which from time to time FBS can withdraw by making an election of a specific amount. Now, Rex Carr will, up to the $1 million, if they want $50,000, whatever they want, provide them with $50,000, and then FBS will provide stock as valued on the OTC, which they're no longer allowed to do, but as valued on the OTC in the amount of $50,000. So Rex gives them $50,000 in cash. They will give $50,000 on the day that they receive the cash in the amount of stock as valued on the OTC. That was a very specific arrangement and agreement. That's right. So that was what Rex Carr would receive, not something equivalent, not some other company stock. It says expressly the type of stock that he would see and the value assigned to it would be as the value of the common stock on the OTC on the day of the exchange. And I think I asked your opponent, so I'll give you the opportunity to answer it. Under that agreement, was Rex Carr allowed to refuse a request for an allotment? The agreement doesn't say. It says the allotment will be up to $1 million. And they have then the requirement to make the election and to provide the stock, and he gives them the cash.   I have one, too. How would the S&Es issue the FPS stock if money were then taken? Thank you. That was another point in your motion, Mr. Chairman and Judge. They have no value. The FPS can't trade, and the S&Es aren't their people. So they receive funds, and then they cannot perform the obligations under the agreement. I'm sorry, Judge. No, go ahead. They say in their response to the demand for bill of particulars that they will provide stock, but they don't say how they will provide it. That's FPS who says this. And they don't say how they will value it, and they don't say how they're going to perform, since it is very expressly in the agreement that you've got to provide the stock as valued by common stock on the OTC on the day of transfer. So they just say it conclusorily, but they don't say how they will do it. The S&Es, I don't know what the S&Es could do. I suppose the S&Es could arrange through FPS to have provided FPS stock when FPS was still allowed to trade it. But the S&Es have never put forth any claim at all, so we don't know what their position will be. And I don't think that the S&Es will ever appear. Honestly, I think they're going to assert jurisdiction. So we have to close this estate. And at this point in time right now, the S&Es are the only people who would close it. I also believe that had a motion to substitute, the judge was quite surprised. The judge was very familiar with this case. We were before him all the time. And the judge was quite surprised that the S&Es existed. My honest belief, and I'm speculating, perhaps I shouldn't do this, is that had an appropriate motion to substitute been filed seven years after the assignment, I'm not completely convinced that the court would have granted it. But I don't think he would have. But on top of it, it was never done. If you're a conduit and you say you're bound by your statement that they're necessary parties, we can't try the case without them, this is their whole point. That's why they continued the October 26 trial. How can they come in and say now that they're not necessary parties and we're going to act as a conduit separate and apart from it? And I think the judge actually, if you look at the record, he actually spoke to that. Where are they? Are they ever going to come here? Why hasn't a claim been filed? Why hasn't anything been done with respect to them? And there was no answer that was clear that was given. So I think for that reason as well, seven years later they're out of the box. My other question was there had been mentioned a motion for summary judgment, and this case was actually decided on a motion on pleadings. So procedurally whatever happened to the motion for summary judgment? Motion for summary judgment was there were two issues. There was a $150,000 note that's not the subject of this appeal and the issues that were involved with the FPS on this appeal. The claimant conceded the $150,000 one, so reduced the claim from $650,000 to $500,000. With respect to the $500,000, the court found that there were questions of fact and set the matter for several trial settings. We were trying to get discovery. We had some difficulty getting discovery, and it percolated along. And then finally on October 26, the counsel for FPS advised the court that there were these assinees who were necessary parties, and continued the trial setting that was coming up at that time with the idea that they were going to add the parties. And by January 11, they had not. I filed a motion to dismiss, and they filed a motion to add, two motions to add these same parties. At the same time, on January 11, I think they just crossed in the mail, frankly. And that's when we appeared before the court. And the judge wanted to know further particulars because he received the motion to add parties that set out the interests and dates of assignment. And he actually said at that point in time, let's reset this for January 30. It actually got moved to January 31. We must set this for January 30 because as I'm looking at this right now, there isn't a remaining claim. You said in Paragraph 2 of your response to the bill, particularly that you assigned the entire claim to these various assinees. And what I, that's what he did on January 30. On January 11, he said, I'm adding these things up. That's $600,000. How do you have a remaining claim, counsel? I want you to come in here with some evidence and some argument that sets forth how you have a remaining claim, which I think was actually, I think Tom Kennedy is a treasure because he's just neutral. And he gave them every opportunity to come in with something, and they came in with nothing, basically. At least that's the estate's position. Thank you, counsel. Are there any questions of Justice Shulman? No, there aren't. Thank you. Thank you, counsel. Rebell. Thank you, Your Honor. What I think, if anything, we can pull out of the arguments today is that there are issues of fact. There are questions as to what happened. There are questions as to when these things happened. There are questions as to what these particular notes, and we're talking about notes, we're not talking about notes of the judge. We're talking about promissory notes that include language relative to what these arrangements were going to be. Unfortunately, we were not in this case when a lot of these things were happening, so I can't respond to why things were done by prior counsel, the manner in which things were done by prior counsel. When did you enter the case, counsel? Sometime just prior to the motion for judgment on the pleadings, the reason we're here. Okay. So we entered at a time all the bill of particulars, all of those things that happened. We then got in with the motion for judgment on the pleadings. And looking at that and the argument that was made to the judge at the time, very much the argument I'm making here, and that is that a judgment on the pleadings is only proper when the pleadings disclose no genuine issue of material fact. Again, we're looking at this much like a summary judgment motion, which was denied. The court determined, at least as to that particular motion for summary judgment, that there were issues of fact. As I listen to counsel's argument, there are issues of fact that come about in terms of why they were doing what they were doing, what is the language of these particular documents, what, in fact, was the intention of the parties. When Mr. Counsel is referring to whether they will come or whether they will not, I don't know that. We don't have a hearing at this point. That's what we're asking for. We're asking for the opportunity to put all that evidence on, so all of the many questions that you have asked, which I think are issues of fact in this particular case, can be answered, and we can determine who, in fact, has the claim against the estate and what that claim may entail. Is it, in fact, a claim or is it a right to a distribution, which is what we contend that it is. I look at an assignment, the general rule, an assignment is the transfer of some identifiable property. We don't have a transfer of anything in the record here. There's nothing that says that the claim of FPS is being transferred to these individuals. Instead, what was happening, and the court did ask, who are they? And they were identified. In response to the bill of particulars, their names were identified, and they were introduced to the court. They have not come to the court. There has not been a hearing for them to do that. So whether, in fact, they are going to appear at some point is an issue that certainly will come up depending on what we have said with the court itself. A valid assignment need only to assign or transfer the whole or part of some particular thing, debt, or chosen action. Again, we don't have that. There's nothing before you to show that the claim that was filed by FPS shortly after the death of Mr. Carr was, in fact, submitted. We know that it was timely filed by FPS, but we have nothing to show that, in fact, it was transferred or assigned or went anywhere. So again, What about the statement that counsel brought up, the initial response from the claimant to the estate's demands for a bill of particulars that says Fuel Performance has assigned its entire claim filed with the court as collateral to the assignees? And then, which was followed by, Your Honor, the amendment to the bill of particulars, which, again, which causes some confusion in this case, but the amendment was made in which it was not an assignment of the claim. The correction was it was an assignment of the interest in the claim. So now we have yet another issue of fact as to what does that mean, what was happening at the time, what is the true rights and interests that these individuals have, because there are four or five of them that have invested a significant amount of money into this, what I've referred to as investment. I don't want to be redundant. I think I've covered the issues that have been raised by counsel. Again, we're requesting that this matter go back to the circuit courts, and there will be an opportunity to determine the answer to what I believe to be numerous issues of fact that are pending. Any questions of Justice Barbera? Just to show the court. Thank you, counsel. Thank you, Your Honor. The court will take the matter under advisement and issue its decision in due course.